JORDEN, Respondent, v. ST. LOUIS & MERAMEC RIVER RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, January 22, 1907.

1. **RES IPSA LOQUITUR: Carriers of Passengers: Collapse of the Floor of a Street Car.** The collapse of the floor of a street car beneath a passenger who was simply walking on it; resulting in injury to the passenger, is evidence of negligence; it is a mishap of extraordinary character to an appliance within the control of the street railway company, a mishap not likely to happen in the absence of negligence, so that the maxim *"res ipsa loquitur"* applies.

2. ———: ———: Inspection. In an action for injuries received
by a passenger from the giving away of the floor of a street car
in which she was riding, it was not error to refuse an instruction
on the part of the defendant directing the jury to find for the
defendant if the car was inspected on the day of the accident
before it was sent out and was found in a safe condition; such
an instruction would make an inspection however superficial
conclusive against the defendant's liability.

Appeal from St. Louis County Circuit Court.—*Hon.
John W. McElhinney,* Judge.

AFFIRMED.

*Jefferson Chandler* and *T. M. Pierce* for appellant.

(1) The court erred in giving the jury, at the re-
quest of plaintiff, and over the objection of the defend-
ant, instruction numbered 1. The said instruction is
erroneous because the court in this instruction made no
qualification of negligence, and no issue of negligence
was submitted to the jury, and hence under this instruc-
tion the jury must have been misled upon the supposition
that the defendant was liable whether negligent in the
operation of its cars or not, merely from the fact that
the plaintiff was injured, and in the absence of any proof
whatever. The effect of this charge was to tell the jury
that if a passenger was hurt the carrier was liable as
an insurer, which is not the law. Allen v. Transit Co.,
183 Mo. 411; Jackson v. Railroad, 118 Mo. 224; Gilson
v. Railroad, 76 Mo. 287; Hite v. Railroad, 130 Mo. 132.
(2) The court erred in refusing to instruct the jury,
as asked by the defendant in instruction "C." The
defendant was entitled to this instruction, because before
any judgment could have been legally rendered against
the defendant because of plaintiff's alleged miscarriage,
it was incumbent upon the plaintiff to have shown a
causal connection between the injuries sustained and
miscarriage, and not to have relied solely and alone upon
a presumption of negligence from the accident itself, and
the conjectural and suppositional evidence of her wit-

nesses. Hawkins v. Railroad, 3 Wash. 593; Scheffer v. Railroad, 105 U. S. 249; Thompson v. Railroad, 141 Mo. 126; Shore v. Bridge Co., 86 S. W. 905; Reed v. Railroad, 87 S. W. 67; Wells Fargo Co. v. Boyle, 87 S. W. 164; Magrane v. Railroad, — Mo. —; Forney v. Gedmacher, 75 Mo. 413; Flori v. St. Louis, 69 Mo. 341; Railroad v. Steinberg, 94 Mo. App. 543; Hyatt v. Railroad, 19 Mo. App. 287. (3) The court erred in refusing to instruct the jury as requested by the defendant, as set out in instruction "F." It was proper for the court to have given the above request, because the mere happening of an accident, such as the one in controversy, raises no presumption of negligence, and their is no other evidence in the record showing negligence on the part of the defendant. Meadows v. Ins. Co., 129 Mo. 76; Feary v. Railroad, 162 Mo. 75, 73 S. W. 159; Dresler v. Railroad, 19 Ind. App. 385; Nellis, Street Railway Law, p. 573; Bradner on Evid., 422; Ray on Neg., 697; Hutch. on Car., 799-801; Wharton on Evid., 661; Booth on Street Railways, 361; 1 Wigmore on Evid., 2509.

*Webb & Webb* and *Robert L. Shackelford* for respondent.

(1) The first contention of the defendant is that the court should have sustained a demurrer at the close of plaintiff's evidence. The court overruled the demurrer, and very properly so — because the testimony clearly showed that plaintiff was injured while a passenger in defendant's car, and that the injury was caused by that portion of the floor of said car giving way beneath plaintiff which covers the motor-hole, located in the aisle of said car at a place where the passengers pass over said floor in passing to and from the seats in said car. These facts make out a prima facie case for plaintiff, and entitled her to a recovery, unless defendant can exonerate itself from negligence. Hipsley v. Railroad, 88 Mo. 348; Daugherty v. Railroad, 81

Mo. 325; Och v. Railroad, 130 Mo. 27; Lemon v. Chanslor, 68 Mo. 340; York v. Koekuk Co., 7 Mo. App. 265; Sharp v. Railroad, 114 Mo. 94; Munster v. Railroad, 53 Mo. App. 276; Gallagher v. Edson, 72 Mo. App. 576; Redmon v. Railroad, 185 Mo. 1; Fillingham v. Transit Co., 102 Mo. App. 573; McCarty v. Railroad, 105 Mo. App. 596. (2) The defendant also insists that instruction 1, given for the plaintiff, does not properly define the care required of carriers of passengers. And upon this point the plaintiff insists that the instruction is fair in this regard and cites the following cases: Fillingham v. Transit Co., 102 Mo. App. 573; Freeman v. Railroad, 95 Mo. App. 94; Furnish v. Railroad, 102 Mo. 438; Smith v. Railroad, 108 Mo. 243. (3) The defendant's instruction "F," offered by defendant and refused by the court, was properly refused. It is a peremptory instruction to find for defendant, based upon an erroneous idea of the law and facts of the case, and was very properly refused. McCarty v. Railroad, 105 Mo. App. 596; Gannon v. Gas Co., 145 Mo. 502; Van Cleve v. Railroad, 107 Mo. App. 96.

GOODE, J.—The petition in this case alleges that on June 28, 1903, plaintiff was received as a passenger on one of defendant's electric cars to be carried from Meramec Highlands in St. Louis county, to her destination, another part of said county; that defendant, unmindful of its duty, so negligently maintained the car on which plaintiff was a passenger that its floor at the point where there was an opening with a cover, was rotten, worn, loose and insecure and unfit for the use defendant was putting it to, and that the floor, by reason of its insecure state, gave way and plaintiff was caused to fall into a hole or opening in the car and sustain serious permanent injuries; that she suffered great physical and mental pain and had been forced to incur and in the future would be forced to incur, large ex-

penses for medicine, medical and surgical attendance and nursing; for all of which damages in the sum of twenty thousand dollars were asked. The answer was a general denial and a plea of contributory negligence on the part of plaintiff, but without alleging any specific act of negligence on her part. There is testimony to prove that about eight o'clock in the evening of the day designated, plaintiff, her husband and some friends, boarded one of defendant's cars at Meramec Highlands to be carried to Old Orchard, a few miles eastward. When plaintiff entered the rear door of the car, she struck her toe against an obstacle in the floor, stumbled forward and the lower part of her body passed through an opening in the floor and down amongst the machinery of the car. Double wooden doors rested in the floor at the front and rear ends and just above the motors. The opening covered by each pair of doors was about twenty-five inches in width and twenty-nine inches in length. The two wings or halves of the doors were an inch longer each way than the opening covered by them and rested on a rabbet one-half inch wide. This rabbet was a rectangular flange cut in the boards of the floor. The floor over the opening into the machinery consisted of the doors used to cover the opening. The two doors at either end were not fastened together nor were they fastened to the floor by hinges. They were supported by no brace or cross-piece beneath them. A handle was attached to each door by which it might be lifted and, when not in use, these handles lay in a groove cut in the door. The proof does not show positively what plaintiff struck her foot against, but does show that one of the doors gave way beneath her, letting her body drop through the floor. Either from the consequent fright or concussion, or both, she was reduced to a state of unconsciousness and lay in that condition with her head on a friend's shoulder, until she reached Old Orchard, where she was put into a surrey, taken to her

home and laid on a bed, still unconscious. That night or
the next day a physician was called. He found her suf-
fering with pain in the left side, which she testified
struck against the edge of the opening when she fell.
The testimony of several physicians who attended her
was that pleural inflammation or pleurisy developed
from the injuries, became of a chronic character and
that she still suffered from it at the time of the trial and
it is likely to be permanent. When hurt plaintiff was
advanced in pregnancy two and one-half months. On
October 23d she was delivered of a still-born child. The
miscarriage was attributed by her physician to the fall
and the condition of health brought on by it. A great
deal of the record consists of expert testimony concern-
ing the probability of the pleurisy and the miscarriage
having been caused proximately by the accident. This
testimony is contradictory. The physicians who waited
on plaintiff were positive that both were consequences
of the accident, and the experts who were introduced by
defendant were equally certain that neither was. There
was evidence to show plaintiff enjoyed good health prior
to the casualty, was able to do much work and was not
noticeably either stout or thin. The ailment from which
she afterwards suffered had reduced her weight. Expert
testimony for defendant was that she was suffering from
tuberculosis — inflammation of the pleura of a tuber-
culosis nature. Her doctors swore they had detected
no symptoms of tuberculosis and that she had chronic
pleurisy. Under the instructions given, the jury re-
turned a verdict for plaintiff, assessing her damages at
$3,000. Judgment for that sum was entered in her
favor and defendant appealed, assigning errors in refer-
ence to the rulings on the instructions; particularly that
the court below refused to direct a verdict in its favor.

The contention that defendant was entitled to an
order for a verdict is rested on the postulate that the
accident itself was no evidence of negligence on the part

of defendant, and that there was an absence of supplementary evidence to show the floor was rotten as alleged in the petition. This contention is unsound from every point of view. The collapse of the floor of a street car beneath a passenger who is simply walking on it, resulting in an injury, is evidence of negligence on the doctrine of *res ipsa loquitur*. It is a mishap of an extraordinary character, to an appliance within the exclusive control of the railroad company, and one that it is not likely to happen in the absence of negligence on the part of the company's employees. [Solarz v. Railroad, 29 N. Y. Supp. 1123; Uggle v. Railroad, 160 Mass. 351.] We consider this one of the clearest cases imaginable for the application of the maxim. The giving way of the floor of a car under a passenger's ordinary tread, is more cogent evidence of bad management than the collision of two cars, which is held to bespeak negligence.

As to the allegations about the floor; though the petition says it was rotten, it also says it was worn, loose and unfit for use; not confining the defects alleged to rottenness. Not only the accident to plaintiff, but positive testimony, shows the floor was loose and unfit for use. It would be a fair finding that she struck her foot against a door because it was loose and projected above the level of the rest of the floor, and one witness swore to seeing the door tilt under plaintiff's weight. An employee of defendant testified that this car was out of use for several months and was disabled, but had been reconstructed. The rabbet on which the door rested was half an inch wide and it was a physical impossibility for the door to have gone down unless the rabbet was worn away, tore loose or the door was too small. The evidence goes to show the rabbet did not burst anywhere around the opening.

A further point is made against the petition in comparison with the evidence, because the petition avers the floor of the car was unfit for use; whereas the proof

shows the door and not the floor gave way. This point does not deserve serious notice, because the door was part of the floor and properly designated as the floor. That is to say, an allegation that the floor was loose and unfit for use, included the door and sufficed to admit evidence that the latter was in bad order.

Complaint is made of the refusal of the court to grant an instruction requested by the defendant to this effect: That if the jury believed from the evidence that the car was inspected on the day it was sent out for business, and was found in a safe condition in respect of the cover, then the allegation regarding the negligence of defendant in maintaining the cover was not sustained by evidence and the verdict should be for the defendant. It would have been error to give that charge. It said nothing about the character of the inspection, but simply stated that if the car was inspected and found to be in good condition, plaintiff could not recover. Such a charge would make any inspection, however superficial, conclusive against defendant's liability. It looks like an inspection which left the inspector satisfied that the cover was in good order, must have been careless; for it is nearly or quite certain that it was not in good order.

Complaint is preferred because the court refused to instruct that there was no evidence that defendant negligently maintained, upheld, kept, preserved or supported an opening with a cover in the floor of the car, and no evidence to show defendant negligently upheld, kept, preserved or supported a rotten, worn, loose, insecure and unfit cover in the floor of the car and, therefore, the verdict should be for the defendant. Suffice to say there was abundant evidence, not only that defendant maintained and kept the door in question, but that it was kept loose and in a state unfit for use.

Instructions were asked telling the jury there was

122 App—22

no evidence to show plaintiff's pleurisy and miscarriage were due to the accident. Our statement of the evidence on these issues suffices to dispose of the errors assigned on the refusal of those charges. Several qualified physicians who attended plaintiff swore, in effect, that the pleurisy and miscarriage were direct and proximate consequences of the injury she received in falling through the floor of defendant's car.

We have found no error in the record and the judgment will be affirmed. All concur.